1

2

The Honorable Ricardo S. Martinez

3

4

5

6

7    **UNITED STATES DISTRICT COURT**
     **WESTERN DISTRICT OF WASHINGTON**
8    **AT SEATTLE**

9
     BRIAN CLAIBORNE,                              No.  C06-1061RSM
10
                Plaintiff,                         **PLAINTIFF'S TRIAL BRIEF**
11
          vs.
12
     THE CITY OF SEATTLE, a Municipal
13   Corporation, CITY OF SEATTLE POLICE
     DEPARTMENT and SEATTLE POLICE
14   OFFICER BRIAN HUNT,

15              Defendants.

16

17                    I.    FACTS

18          On June 6, 2004 at approximately 2:00 a.m. plaintiff Brian Claiborne was driving home

19   from work in his car.  Mr. Claiborne was working for a cleaning company and had been stripping

20   and waxing floors in the Ballard neighborhood of Seattle, Washington.  Mr. Claiborne was

21   driving his Nissan station wagon that was registered in his name.

22          Mr. Claiborne was stopped by defendant Seattle Police Officer Brian Hunt near the

23   intersection of 10th Ave NE and East Pike Street in Seattle.  Defendant Hunt informed Mr.

24
     PLAINTIFF'S TRIAL BRIEF                                 Law Offices of
                                                      Lembhard G. Howell, P.S.
     NO. C06-1061RSM   PAGE 1                         Pacific Building, Suite 2105
                                                      Seattle, Washington 98104
                                                           (206) 623-5296

Claiborne that the license plates on his car were not the correct license plates[1].  Defendant Hunt

called Mr. Claiborne "boy" and a "nigger" and stated that Mr. Claiborne must be drunk if he

does not know that he has the wrong license plates on his car.  Mr. Claiborne states that he does

not drink and he had not been drinking that night.  Defendant Hunt then grabbed Mr. Claiborne

by the hair and by his collar and pulled him out of the car.  Defendant Hunt slammed Mr.

Claiborne's face against the car three times.  Mr. Claiborne claims he suffered chipped, cracked,

and jammed teeth as a result of defendant Hunt's actions.

Seattle Police Officer Kevin Runolfson arrived at the scene and transported Mr.

Claiborne to the police station.  Mr. Claiborne claims that he was not given a field sobriety test

and he was not given a portable breath test at the scene.  Mr. Claiborne was given several

breathalyzer tests at the police station.  Mr. Claiborne claims the results of the first ones showed

that he had no alcohol in his system.  Mr. Claiborne was unable to take the sixth test because he

was out of breath.  Mr. Claiborne was charged with DUI and that charge was dismissed when

Officer Runolfson did not appear for the trial.

Mr. Claiborne had cleaning equipment (a mechanical floor stripper and a floor waxer)

valued at $7,000 in his car at the time of his arrest.  The equipment belonged to his employer.

Mr. Claiborne remained in jail for an extended period of time and was therefore unable to get his

vehicle out of impound and was unable to get the cleaning equipment back to his employer.  Mr.

Claiborne's car was sold, apparently with the equipment still in it.

---

[1] Mr. Claiborne had taken his car to a mechanic.  The mechanic had had license plates stolen off of his customers'
vehicles in the past, so the mechanic removed the license plates Mr. Claiborne's car so that they would not be stolen
while on the mechanic's property.  When Mr. Claiborne picked up his car from the mechanic, the mechanic
mistakenly put the wrong license plates on Mr. Claiborne's car.

PLAINTIFF'S TRIAL BRIEF

NO. C06-1061RSM   PAGE 2

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

1         Mr. Claiborne was evicted from his apartment while he was incarcerated and all of his

2    personal belongings were lost, including a vast record collection that he had received from his

3    father.  Mr. Claiborne also lost his job due to the arrest.  Mr. Claiborne is now homeless.  Mr.

4    Claiborne suffers from depression and needs surgery to fix his teeth.

5    **II.**      **CAUSES OF ACTION**

6         The following causes of action will be pursued at trial:

7         1.     42 U.S.C. § 1983 excessive force claim against defendant Hunt;

8         2.     State law outrage claim against defendant Hunt; and

9         3.     State law negligence claim against the City of Seattle.

10   **A.**     **42 U.S.C. § 1983 excessive force claim against defendant Hunt**

11   42 U.S.C. § 1983 establishes, in pertinent part:

12        Every person who, under color of any statute, ordinance, regulation, custom, or

13   usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

14   secured by the Constitution and laws, shall be liable to the party injured in an action at law…

15   42 U.S.C. § 1983.

16        Mr. Claiborne's rights were violated under color of law when defendant Hunt used

17   excessive force during the traffic stop and detention.  There is no question that defendant Hunt

18   was operating under color of state law during the incident.  A claim that excessive force was

19   used in affecting an arrest or during an investigatory stop raises Fourth Amendment issues.

20   *Graham v. M.S. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  Such a

21   claim is analyzed under the Fourth Amendment's "reasonableness" standard.  *Id*. at 395.  The

22   reasonableness test,

23        requires careful attention to the facts and circumstances of each particular case,

24   including the severity of the crime at issue, whether the suspect poses an

PLAINTIFF'S TRIAL BRIEF

NO. C06-1061RSM   PAGE 3

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

1    immediate threat to the safety of the officers or others, and whether he is actively
     resisting arrest or attempting to evade arrest by flight.

2

3    *Id*. at 397.  The reasonableness of the use of force is to be judged from the perspective of "a

     reasonable officer on the scene."  *Id*.

4

5         Mr. Claiborne need not prove significant physical injury to prevail on his excessive force

6    claim.  *Busch v. Torres*, 905 F.Supp. 766 (C.D.Cal. 1995) lists "significant physical injury" as

7    one of the elements of an excessive force claim.  *Busch* at p. 772.  The court in *Busch* looked to

     *Johnson v. Morel*, 876 F.2d 477, 480 (5th Cir.1989) for the elements of an excessive force claim.

8

9    However, the Fifth Circuit held in 1994 that the *Johnson v. Morel* elements of an excessive force

     claim are no longer valid.  *Harper v. Harris County Texas*, 21 F.3d 597 (5th Cir. 1994).

10

11   Specifically, the court in *Harper* held that, "***[a] plaintiff is no longer required to prove

     significant injury to assert a section 1983 Fourth Amendment excessive force claim***."  *Harper*

12

13   at 600 (emphasis added).  The *Harper* court so ruled because the United States Supreme Court,

     "overruled the significant injury prong in an Eighth Amendment excessive use of force context."

14

15   *Harper* at 600 (*citing Hudson v. McMillan*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)).

     The district court's reliance in *Busch* on *Johnson v. Morel* was erroneous.  Mr. Claiborne need

16

17   not prove that he suffered significant physical injury as a result of defendant Hunt's use of

     excessive force.  Nevertheless, Mr. Claiborne intends to prove at trial that he suffered injury to

18

19   his teeth.

20        Defendant Hunt's use of force was excessive.  The severity of the crime at issue was

     minimal – a suspicion of DUI by defendant Hunt based purely on the fact that Mr. Claiborne had

21

22   the wrong license plates on his car.  Mr. Claiborne posed no threat to defendant Hunt or to

     others.  Mr. Claiborne remained calm throughout the incident and did not resist, even when

23

24

PLAINTIFF'S TRIAL BRIEF

NO. C06-1061RSM   PAGE 4

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

1    defendant Hunt was hitting his face against the car.  A reasonable officer at the scene would not

2    have used the level of force that defendant Hunt used against Mr. Claiborne.

3           **B.        State law outrage claim against defendant Hunt**

4           Washington has adopted the Restatement (Second) of Torts, §46(1), (2), and (2)(a)

5    definition of outrage. *Grimsby v. Samson*, 85 Wn.2d 52, 60, 530 P.2d 291 (1975).  The basic

6    elements of the tort of Outrage are:

7           (1) extreme and outrageous conduct;

8           (2) intentional or reckless infliction of emotional distress; and

9           (3) actual result to the plaintiff of severe emotional distress.

10   *Rice v. Janovich*, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987); Restatement (Second) of Torts §46

11   (1965).

12          "When one in a position of authority, actual or apparent, over another has allegedly made

13   racial slurs and jokes and comments, this abusive position gives added impetus to the claim of

14   outrageous behavior."  *Contreras v. Crown Zellerbach Corp.*, 88 Wn.2d 735, 741 (1977) (*citing*

15   Restatement (Second) of Torts 46, comment E).  "The relationship between the parties is a

16   significant factor in determining whether liability should be imposed."  *Id*.  "'Plaintiff's own

17   susceptibility to racial slurs and other discriminatory conduct is a question for the trier of fact,

18   and cannot be determined on demurrer' . . . It is for the trier of fact to determine, taking into

19   account changing social conditions and plaintiff's own susceptibility, whether the particular

20   conduct was sufficient to constitute extreme outrage."  *Id*. at 741-42 (*quoting Alcorn v. Anbro*

21   *Engineering, Inc.*, 2 Cal.3d 493, 498-99, 468 P.2d 216, 86 Cal.Rptr. 88 (1970).

22          A uniformed, armed, on-duty police officer is in a position of considerable actual

23   authority over a person stopped by that officer.  Mr. Claiborne has testified at deposition, and

24   will testify at trial that defendant Hunt called him "boy" and "nigger" during the traffic stop.  It

PLAINTIFF'S TRIAL BRIEF

NO. C06-1061RSM   PAGE 5

1   is extreme and outrageous behavior for a police officer to use such despicable racial slurs.  For

2   that officer to accuse a sober driver of being drunk and to initiate a DUI investigation of that

3   sober driver is also extreme and outrageous behavior.  Defendant Hunt must know that an

4   unwarranted assertion of power over an innocent and cooperative citizen accompanied by the use

5   of racial slurs and excessive force will inflict emotional distress upon that citizen, supporting a

6   claim that defendant Hunt's infliction of emotional distress upon Mr. Claiborne was intentional.

7   At the very least, defendant Hunt's infliction of emotional distress upon Mr. Claiborne was

8   reckless.

9       Mr. Claiborne need not show objective symptomatology (such as a diagnosable disease,

10  illness, or physical injury) of his emotional distress.  In *Brower v. Ackerley*, 88 Wn. App. 87, 99-

11  100, 943 P.2d 1141, *rev. denied*, 134 Wn.2d 1021 (1998), the court held:

12      [The objective symptomatology] requirement, however, belongs to the tort of negligent
        infliction of emotional distress. No Washington case has incorporated it into the tort of
13      outrage. The restatement has recognized that bodily harm is not necessary.

14  *Brower* at 99-100 (internal cites omitted).  *Brower* cited the Restatement (Second) of Torts §46,

15  comment j, which states that "in many cases the extreme and outrageous character of the

16  defendant's conduct is in itself important evidence that the distress has existed."

17      Mr. Claiborne has suffered severe emotional distress.  He has testified at deposition, and

18  will testify at trial, that he suffered from depression following the incident and was to the point

19  where he wanted to die.

20      **C.      State law negligence claim against the City of Seattle**

21      "An employer may be liable for harm caused by an incompetent or unfit employee if (1)

22  the employer knew, or in the exercise of ordinary care, should have known of the employee's

23  unfitness before the occurrence; and (2) retaining the employee was a proximate cause of the

24

PLAINTIFF'S TRIAL BRIEF

NO. C06-1061RSM   PAGE 6

Law Offices of
Lembhard G. Howell, P.S.
Pacific Building, Suite 2105
Seattle, Washington 98104
(206) 623-5296

1  plaintiff's injuries." *Betty Y. v. Al-Hellou*, 98 Wn. App. 146 (1999), 148-49, 988 P.2d 1031

2  (*citing Carlsen v. Wackenhut Corp.*, 73 Wn. App. 247, 252, 868 P.2d 882 (1994)).

3      Plaintiff expects to present evidence at trial that the City of Seattle knew or should have

4  known of defendant Hunt's unfitness to work as a police officer and that their retention of

5  defendant Hunt proximately caused Mr. Claiborne's injuries – had defendant Hunt not been

6  working as a police officer at the time of the incident Mr. Claiborne would not have been pulled

7  over in the first place and would not have been subjected to the use of excessive force.

8                          **III.    <u>DAMAGES</u>**

9      Mr. Claiborne seeks special damages for past and future medical expenses, the loss of his

10  vehicle, the loss of the cleaning equipment in his vehicle, and the loss of personal belongings

11  such as his record collection.

12      Mr. Claiborne seeks general damages for past and future physical and psychological pain

13  and suffering and loss of enjoyment of life.

14      Mr. Claiborne seeks punitive damages against defendant Hunt based upon defendant

15  Hunt's evil motive or intent, and/or his reckless or callous indifference to the federally protected

16  rights of Mr. Claiborne.

17                      **IV.    <u>JUROR QUESTIONNAIRE</u>**

18      Plaintiff requests that the Court have the members of the venire fill out the attached Juror

19  Questionnaire which is modeled after the questionnaire used in *Hankin, et al. v. City of Seattle*,

20  United States District Court, Western District of Washington, Cause No. C00-1672P.  Counsel

21  for defendants' office represented the defendant City of Seattle in that case and gave input on

22  this questionnaire for its use.

23

24  / / /

PLAINTIFF'S TRIAL BRIEF

NO. C06-1061RSM   PAGE 7

1

### V.      PROPOSED VOIR DIRE QUESTIONS

2     Plaintiff submits the attached proposed voir dire questions.

3

4     DATED this 30th day of August, 2007.

5                                    Law Offices of Lembhard G. Howell, P.S.

6
                                     /s/ Lembhard G. Howell_____
7                                    Lembhard G. Howell, WSBA #133
                                     Attorney for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S TRIAL BRIEF

NO. C06-1061RSM   PAGE 8